Opinion issued April 24, 2008






 


     





In The
Court of Appeals
For The
First District of Texas




NO. 01-07-00489-CV




TYRONE MICHAEL QUINN, Appellant

v.

SHALEH RENE MILANIZADEH, Appellee




On Appeal from the 308th District Court
Harris County, Texas
Trial Court Cause No. 2006–54495




MEMORANDUM OPINION

          This appeal arises from the divorce proceeding between appellant, Tyrone
Michael Quinn, and appellee, Shaleh Rene Milanizadeh. Quinn challenges the trial
court’s “Final Decree of Divorce” in four issues by contending that (1) the case
should have been tried by the referring judge, rather than the associate judge; (2) the
decree did not conform to Milanizadeh’s pleading; (3) the evidence did not show that
a common-law marriage existed between Quinn and Milanizadeh; and (4) certain real
property in which Quinn had a separate property interest was mischaracterized as
wholly community property. 
          We affirm. 
Background
          In June 1998, Quinn and Milanizadeh began dating. One year later,
Milanizadeh moved to Atlanta to live with Quinn, who had taken a job there. In
2000, the couple separated and Milanizadeh moved back to Houston. Two weeks
after she returned to Houston, Milanizadeh discovered that she was pregnant. After
learning of the pregnancy, Quinn moved back to Houston. The couple’s daughter,
S.Q., was born on June 30, 2001. 
          Quinn and Milanizadeh purchased a home together in October 2001. Quinn
resided in the home with Milanizadeh and his daughter. In April 2004, Quinn began
working in Kuwait. Originally, Quinn had signed a one-year contract to work
overseas, but then signed another contract and stayed a second year in Kuwait. 
During that time, when Quinn returned on vacation, he would stay with Milanizadeh
at their home. In August 2005, while working in Kuwait, Quinn purchased a high-rise condominium unit in Dubai for investment purposes . 
          After finishing his work in Kuwait, Quinn returned home in June 2006 to live
with Milanizadeh. After learning that Quinn had engaged in infidelities, Milanizadeh
filed for divorce on August 31, 2006. At that time, Quinn still resided with
Milanizadeh.
          The case was referred to and tried by an associate judge. With respect to S.Q.,
the parties agreed that Quinn and Milanizadeh should be named joint managing
conservators with standard possession rights and that Milanizadeh would establish
S.Q.’s primary residence. 
          The issues tried to the associate judge were whether a common-law marriage
existed between Quinn and Milanizadeh and, if so, the proper division of the marital
estate. During trial, the associate judge first found that a marriage existed between
Quinn and Milanizadeh. Trial then proceeded with respect to division of the marital
estate. 
          Three weeks after trial, the associate judge sent the parties his written
recommendations with respect to the marital estate. The associate judge made the
following pertinent awards: (1) Milanizadeh was awarded the couple’s home and the
balances in all bank and savings accounts and (2) Quinn was awarded the
condominium in Dubai. 
          Neither party requested a de novo review by the referring judge, and the
referring judge signed a “Final Decree of Divorce” incorporating the associate judge’s
recommendations. Quinn now appeals the decree. 
Challenge to Associate Judge Hearing Case
          In his first issue, Quinn contends, “The trial [referring] court erred by allowing
the case to be heard by an associate judge after a written objection was filed in
Quinn’s original answer.” 
          Family Code section 201.005 permits a presiding district court judge to refer 
certain family law matters to an associate judge. Tex. Fam. Code Ann. § 201.005
(Vernon 2002). That section further provides that if one of the parties files an
objection to the associate judge presiding over trial, then the case shall be tried by the
referring judge rather than the associate judge. Id. 
          Here, in his original answer to Milanizadeh’s petition, Quinn filed a written
objection to an associate judge trying the case. Quinn claims on appeal that he never
waived his right to object to the associate judge trying the case. The record indicates
to the contrary. The record reflects that Quinn expressly waived his right to object
to trial before an associate judge. Specifically, Quinn and Milanizadeh, and each
party’s attorney, signed a Rule 11 agreement waiving any objections to the associate
judge hearing the case on the merits.
          We overrule Quinn’s first issue.
Decree Conforming with Pleadings
          In his second issue, Quinn asserts, “The trial court committed error in making 
an inequitable division of the community estate when the trial court’s judgment failed
to conform to Milanizadeh’s pleadings.” 
          In her petition, Milanizadeh pled insupportability as the ground for divorce. 
See Tex. Fam. Code Ann. § 6.001 (Vernon 2006) (defining “insupportability”). 
Quinn correctly states that a judgment must conform with the pleadings. Tex .R. Civ.
P. 301. Here, the decree states that “the marriage between Quinn and Milanizadeh is
dissolved on the ground of insupportability.” Thus, as pointed out by Milanizadeh,
the judgment does conform with Milanizadeh’s pleading. 
          We overrule Quinn’s second issue.
Common-Law Marriage
          In his third issue, appellant contends, “The trial court committed an abuse of
discretion when it concluded a common-law marriage existed between the parties.” 
Fairly considering his appellate arguments, we construe Quinn’s third issue to be a
challenge to the legal and factual sufficiency of the evidence to support the finding
that a common-law marriage existed between Quinn and Milanizadeh. 
A.      Standards of Review
          In conducting a legal sufficiency review, we consider “whether the evidence
at trial would enable reasonable and fair-minded people to reach the verdict under
review.” City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005). We “credit
favorable evidence if [a] reasonable [fact-finder] could, and disregard contrary
evidence unless [a] reasonable [fact-finder] could not.” Id. If the evidence falls
within the zone of reasonable disagreement, we may not substitute our judgment for
that of the fact-finder, which alone determines the credibility of the witnesses and the
weight, if any, to be given their testimony. Id. at 819, 822. 
          We review the evidence in the light most favorable to the verdict and indulge
every reasonable inference that supports it. Id. at 822. Nonetheless, we may not
disregard evidence that allows only one inference. Id. We will sustain a legal
sufficiency challenge if the record shows one of the following: (1) a complete absence
of evidence of a vital fact; (2) rules of law or evidence bar the court from giving
weight to the only evidence offered to prove a vital fact; (3) the evidence offered to
prove a vital fact is no more than a scintilla; or (4) the evidence establishes
conclusively the opposite of the vital fact. Id. at 810.
          In contrast, when conducting a factual-sufficiency review, we consider all the
evidence in the record, both supporting and conflicting, and set aside the verdict only
if it is so contrary to the overwhelming weight and preponderance of the evidence that
it is clearly wrong and manifestly unjust. Plas-Tex Inc. v. U.S. Steel Corp., 772
S.W.2d 442, 445 (Tex. 1989); Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986). In an
appeal from a bench trial, we do not invade the fact-finding role of the trial court,
which alone determines the credibility of the witnesses, the weight to give their
testimony, and whether to accept or reject all or any part of that testimony. 
Nordstrom v. Nordstrom, 965 S.W.2d 575, 580–81 (Tex. App.—Houston [1st Dist.]
1997, pet. denied).
B.      Common-Law Marriage: The Basic Principles
          It is undisputed that no ceremonial marriage occurred between Quinn and
Milanizadeh. Rather, the question presented at trial was whether they were married
by virtue of an informal, or as known colloquially, a “common-law marriage.” By
finding that Quinn and Milanizadeh were married, the associate judge implicitly
found that Quinn and Milanizadeh had entered into a common-law marriage. 
          In Texas, common-law marriage can be established by showing that the parties
(1) agreed to be married; (2) cohabitated in Texas as husband and wife; and (3)
represented to others that they were married. Tex. Fam. Code Ann. § 2.401(a)(2)
(Vernon 2006); Russell v. Russell, 865 S.W.2d 929, 932 (Tex. 1993); Eris v. Phares,
39 S.W.3d 708, 713 (Tex. App.—Houston [1st Dist.] 2001, pet. denied). As the
proponent of the marriage, Milanizadeh had the burden of proof on these elements. 
Lewis v. Anderson, 173 S.W.3d 556, 559 (Tex. App.—Dallas 2005, pet. denied);
Jenkins v. Jenkins, 16 S.W.3d 473, 480 (Tex. App.—El Paso 2000, no pet.). The
existence of a common-law marriage is a question of fact to be resolved by the fact-finder. Jenkins, 16 S.W.3d at 480.
C.      Analysis
          1.       Agreement to be Married
          Quinn first challenges the associate judge’s implied finding that he and
Milanizadeh had an agreement to be married. 
          To establish an agreement to be married, “the evidence must show the parties
intended to have a present, immediate, and permanent marital relationship and that
they did in fact agree to be husband and wife.” Eris, 39 S.W.3d at 714. The
agreement to be married may be established by direct or circumstantial evidence.
Russell, 865 S.W.2d at 933. The testimony of one of the parties to the marriage
constitutes direct evidence that the parties agreed to be married. See Eris, 39 S.W.3d
at 714 (citing Collora v. Navarro, 574 S.W.2d 65, 70 (Tex. 1978)); In re Estate of
Giessel, 734 S.W.2d 27, 32 (Tex. App.—Houston [1st Dist.] 1987, writ ref’d n.r.e.)).
The conduct of the parties, evidence of cohabitation, and representations to others
may constitute circumstantial evidence of an agreement, depending on the facts of the
case. See Russell, 865 S.W.2d at 933; Eris, 39 S.W.3d at 714.
          At trial, Milanizadeh presented direct and circumstantial evidence supporting
her claim that the parties agreed to be married. 
          Milanizadeh first testified that when she moved from Houston to Atlanta in
June 1999 to live with Quinn, she and Quinn agreed that they were married. She
testified that when she first arrived in Atlanta, Quinn said, “Hello, Mrs. Quinn.” 
          Milanizadeh also presented evidence that the agreement to be married
continued once the couple returned to Texas. The evidence showed that Quinn and
Milanizadeh purchased a home together in October 2001 with a “VA loan.” 
Milanizadeh testified that she was identified in the VA loan papers as Quinn’s wife. 
          The evidence further showed that the couple lived together in the home they
purchased together. Quinn does not dispute that he resided with Milanizadeh in the
home until April 2004, when he went to work in Kuwait. Milanizadeh testified that
when Quinn came back to Houston on vacation while he worked overseas, he would
stay at the home they purchased together. After his employment in Kuwait ended in
June 2006, Quinn returned to Houston and again lived with Milanizadeh in the home
they had purchased together. In July 2006, the couple went on a vacation together to
Aruba and purchased a time share there together. Quinn testified that when he
accepted a another job in Kuwait in the summer of 2006, he asked Milanizadeh to
move there with him; however, Milanizadeh declined because she was in school to
earn her master’s degree. 
          Milanizadeh and Quinn both testified that Quinn had Milanizadeh on his health
insurance plan for two years. 
          Milanizadeh also testified that Quinn’s family referred to her as their daughter-in-law and her family referred to Quinn as their son-in-law. A friend of Milanizadeh,
who testified at trial, stated that she thought Quinn and Milanizadeh were married. 
          Quinn claims such evidence is insufficient to show an agreement because it is
contradicted by other evidence in the record, most prominently his own testimony that
he did not agree he and Milanizadeh were married. Quinn points out that
Milanizadeh testified that she and Quinn had essentially ended their relationship in
2000 when she left Atlanta to return to Houston. But, Milanizadeh also testified that,
after she found out she was pregnant, Quinn moved to Houston, and the two bought
a home together, indicating a reconciliation. 
          Quinn also cites the testimony of Milanizadeh’s friend, who testified, although
she heard Milanizadeh refer to Quinn as her husband, she never heard Quinn refer to
Milanizadeh as his wife. Nonetheless, as mentioned above, the friend testified that
she thought that Quinn and Milanizadeh were married. 
          In addition, Quinn points to a document, entitled “Contract Agreement,” that
he and Milanizadeh signed with respect to the purchase of their home. The document
provided that, if after five years, either Quinn or Milanizadeh wished to sell the home,
the other party must either agree to the sale of the home or must buy 50 per cent of
the equity accrued in the home to the other party. The document also provided,
“Common law marriage should not be taken in consideration with respect to this
document.” 
          Regarding the Contract Agreement, Milanizadeh testified that, though the
document states that the parties were not signing under duress, she felt pressured by
Quinn to sign it. She testified that Quinn asked her to sign the document on the day
they were scheduled to close on the house. Milanizadeh stated that her daughter was
only three months old, and they had already given notice on the apartment in which
they had been living. She feared that if she did not sign the document, the closing
would not take place, and they would have no place to live.
          Quinn further points out that he and Milanizadeh had separate bank accounts
and that he and Milanizadeh filed separate tax returns, filing as single persons. 
Milanizadeh testified that she and Quinn filed in this manner because it was more
economically advantageous to them. 
          Quinn also asserts that Milanizadeh’s claim that the couple had an agreement
to be married is undermined by her own testimony that she knew that Quinn was
“dating” other women. Despite Quinn’s characterization, Milanizadeh testified that
she learned that Quinn was engaging in infidelities, not that he was “dating” other
women. 
          Quinn further cites evidence that, when the Dubai condominium was
purchased, he purchased it alone. In contrast, Milanizadeh testified that Quinn used
funds belonging to the marital estate to purchase the property. According to
Milanizadeh, the two had discussed the purchase, and Quinn had told her that the
purchase was an investment. 
          In sum, the evidence referenced by Quinn goes to the weight afforded the
evidence and does not serve to negate a common-law marriage. See Giessel, 734
S.W.2d at 31 (concluding that “wife’s” denial of marriage in tax returns, social
security, driver’s license, bank, and pay records did not negate existence of common-law marriage, but went to weight of evidence). Thus, any conflicts in the evidence
did not preclude an implicit finding that Quinn and Milanizadeh had agreed that they
were married; rather the conflicts go to the weight of the evidence and were for the
fact-finder to resolve. See id. 
          Lastly, Quinn contends that, because he ceased living with Milanizadeh on
April 21, 2004 when he moved to Kuwait for work, Family Code section 2.401(b)
operates to create a rebuttable presumption that there was no agreement between the
couple that they were married. Section 2.401(b) provides that if the proponent of the
marriage does not commence a proceeding to prove the marriage under Family Code
section 2.401(a)(2) within two years of the date on which the parties to the alleged
marriage separated and ceased living together, then there is a rebuttable presumption
that the parties did not enter into an agreement to be married. Tex. Fam. Code Ann.
§ 2.401(b). The undisputed record reveals that, after he returned from Kuwait in June
2006, Quinn lived with Milanizadeh for at least two months before she filed for
divorce on August 31, 2006. Thus, the rebuttable presumption contemplated in
section 2.401(b) has no application in this case. 
          2.       Cohabitation
          Quinn next challenges the cohabitation element. He contends that he and
Milanizadeh stopped living together on April 21, 2004, when he moved to Kuwait for
a new job. As mentioned, Milanizadeh testified that, when he returned to Houston
on vacation, Quinn stayed with her in the home that they had purchased together. 
          The evidence also showed that, when Quinn finished his job in Kuwait in June
2006, he moved back to the home he purchased with Milanizadeh. She did not file
for divorce until the end of August 2006. Contrary to Quinn’s position, this and other
courts have held that evidence of similar living arrangements was sufficient to
support a finding of cohabitation. See Winfield v. Renfro, 821 S.W.2d 640, 646–48
(Tex. App.—Houston [1st Dist.] 1991, writ denied) (concluding evidence of
cohabitation sufficient when man only spent about 100 days with woman in two
years); see also Ballesteros v. Jones, 985 S.W.2d 485, 491 (Tex. App.—San Antonio
1998, writ denied) (concluding that evidence sufficient to establish cohabitation
element between man, a Mexican national whose permanent residence was in Nuevo
Laredo, and woman, even though man split time between homes); Bolash v. Heid, 733
S.W.2d 698, 699 (Tex. App.—San Antonio 1987, no writ) (holding that evidence that
man, employed in Nigeria, stayed at woman’s residence during his periodic visits to
Texas was sufficient to support finding that they lived together as husband and wife
“to the extent possible under the circumstances”).
          3.       Holding Out to Others
          Quinn urges that the evidence is legally and factually insufficient to support the
implied finding that he and Milanizadeh held themselves out to the public as being
married.
          To satisfy this element of common-law marriage, parties must have represented
to others that they were married. The requirement of “represented to others” is
synonymous with the judicial requirement of “holding out to the public.” Winfield,
821 S.W.2d at 648; Giessel, 734 S.W.2d at 30. It is well settled that “holding out”
may be established by conduct and actions of the parties. Winfield, 821 S.W.2d at
648; Giessel, 734 S.W.2d at 31. Spoken words are not necessary to establish
representation as husband and wife. Winfield, 821 S.W.2d at 648. 
          In this regard, as mentioned, evidence was presented that Quinn and
Milanizadeh signed the VA loan to purchase their home as husband and wife. The
evidence also showed that Quinn covered Milanizadeh on his health insurance for
two years. 
          Milanizadeh testified that she heard Quinn refer to her as his wife to their
friends and families. Milanizadeh’s friend also testified that she thought that the
couple was married. The friend heard Milanizadeh refer to Quinn as her husband and 
never heard Quinn deny that he was married to Milanizadeh. Testimony was also
presented that the couple’s families considered Quinn and Milanizadeh to be married. 
The evidence also showed that Quinn and Milanizadeh purchased a time share in
Aruba together in July 2006. 
          Quinn contends that the equal inference rule prevents an inference of a holding
out of marriage. As noted by Quinn, the equal inference rule applies in weak
circumstantial evidence cases where the jurors would have to guess whether a vital
fact exists. Lewis, 173 S.W.3d at 562 (citing Ford Motor Co. v. Ridgway, 135 S.W.3d
598, 601 (Tex. 2004)). Quinn contends, “[T]he equal inference rule should apply to
this case because of the weak circumstantial evidence adduced at trial of holding out
to others as married.” We disagree. 
          We conclude the equal inference rule does not apply because there was direct
evidence of the holding out of a marriage between Quinn and Milanizadeh. See id.
(concluding equal inference rule does not apply to direct evidence that couple had
represented to others that they were married). Specifically, evidence was presented
that Quinn and Milanizadeh held themselves out as being married when obtaining a
VA loan. Milanizadeh also testified that Quinn referred to her publically as his wife.
          Applying the appropriate standards of review, we hold that the evidence was
legally and factually sufficient to support a finding that a common-law marriage
existed between Quinn and Milanizadeh. 
          We overrule Quinn’s third issue.
Characterization of Property
          In his fourth issue, Quinn contends that the trial court erred by characterizing
the Dubai condominium “as wholly community property.” Quinn asserts that the
property was purchased, in part, with funds that were his separate, pre-marital
property. Quinn presents this issue as a challenge to the legal and factual sufficiency
of the evidence. 
          The Family Code requires that the trial court divide the marital estate of the
parties in a manner that is just and right, having due regard for the rights of each
party. Tex. Fam. Code Ann. § 7.001 (Vernon 2006). The trial court has broad
discretion in dividing the marital estate at divorce. See Murff v. Murff, 615 S.W.2d
696, 698 (Tex. 1981). In our review, we will reverse the cause only where the trial
court abused that discretion. See id. Under this abuse of discretion standard, the
legal and factual sufficiency of the evidence are not independent grounds of error, but
are merely relevant factors in assessing whether the trial court abused its discretion. 
Zieba v. Martin, 928 S.W.2d 782, 786 (Tex. App.—Houston [14th Dist.] 1996, no
writ). 
          All property on hand at the dissolution of marriage is presumed to be
community property. Tex. Fam. Code Ann. § 3.003(a) (Vernon 2006). It is a
rebuttable presumption requiring a spouse claiming assets as separate property to
establish its separate character by clear and convincing evidence. Id. § 3.003(b). 
          At trial, Quinn testified that part of the funds used for the $75,000 purchase
price of the Dubai condominium came from a pre-marital retirement account. In
contrast, Milanizadeh testified that the entire purchase price was paid with money
earned during the marriage. No other evidence was presented regarding the source
of the funds used to pay for the property.


 
          As fact finder, the associate judge was permitted to believe the testimony of
Milanizadeh and to disbelieve that of Quinn. We hold that no abuse of discretion has
been shown with regard to the characterization of the Dubai condominium as
community property. 
          We overrule Quinn’s fourth issue. 
Conclusion
          We affirm the judgment of the trial court.




                                                             Laura Carter Higley
                                                             Justice

Panel consists of Justices Nuchia, Hanks, and Higley.